Travis Wayne GOODSELL
1300 East Center Street
P.O. Box 270
Provo, UT 84603

# In the United States District Court
## District of Utah Central Division

RECEIVED CLERK
APR 21 2010
U.S. DISTRICT COURT

FILED
U.S. DISTRICT COURT
2010 APR 27 P 2:04
DISTRICT OF UTAH
BY: DEPUTY CLERK

Travis Wayne GOODSELL
plaintiff,

vs.

The ~~Salt La~~ State of Utah, et al.
Lohra L. Miller, D.A. for Salt Lake County
Howard Lemcke, bar #3729, Deputy D.A.
Utah Highway Patrol
Officer Carolina Herrin
Salt Lake County Sheriff's Department
Deputy Aaron Torres
Salt Lake County Jail
The Church of Jesus Christ of Latter-Day Saints
The Utah State Hospital
Dr. Vitko
Dr. Partridge
Dr. Golding
Dr. Cahoon
Legal Defender Association
Adam Elmore
Judge Trease
Judge Royal Hansen
Brent Hyde
Wayne Lewis GOODSELL
Judy Kay GOODSELL
defendants.

Civil Rights Complaint
Title 42 USC § 1985

Case: 2:10cv00367
Assigned To : Kimball, Dale A.
Assign. Date : 4/21/2010
Description: Goodsell v. State of Utah et al.

civil no:

Jurisdiction is proper in this court according to: Title 42 USC § 1985

Plaintiff: Travis Wayne GOODSELL
citizen of: Utah, USA
mailing address: 1300 East Center Street, P.O. Box 270, Provo, UT 84603

Defendant #1: Lohra L. Miller
Is a citizen of: Utah
Is employed as: District Attorney for Salt Lake County
Was the defendant acting under the authority or color of State Law at the time these claims occurred? YES. She is the supervising prosecutor against the ~~de~~ plaintiff in case #081906452.

Defendant #2: Howard Lemcke
Is a citizen of: Utah
Is employed as: Deputy District Attorney for Salt Lake County
Was the defendant acting under the authority or color of State Law at the time these claims occurred? YES. He is the prosecuting attorney against the plaintiff in case # 081906452.

Defendant #3: Utah Highway Patrol
Was the defendant acting under the authority or color of State law at the time these claims occurred? YES. They sanctioned the investigation and arrest of the plaintiff in case #081906452.

Defendant #4: Carolina Herrin
Is a citizen of: Utah
Is employed as: Officer for the Utah Highway Patrol, Capital Office
Was the defendant acting under the authority or color of State Law at the time these claims occurred? YES. She is the arresting officer of the plaintiff in case #081906452.

Defendant #5: Salt Lake County Sheriff's Department
Was the defendant acting under the authority or color of State Law at the time these claims occurred? YES. They sanctioned a joint investigation of the plaintiff in case #081906452. And held the plaintiff at the Salt Lake County Jail.

Defendant #6: Aaron Torres
Is a citizen of: Utah
Is employed as: Deputy for the Salt lake County Sheriff's Department, Mattheson Courthouse Office
Was the defendant acting under the authority or color of State Law at the time these claims occurred? YES. He was an investigating officer and a witness for the defendant against the plaintiff in case #081906452.

Defendant #7: Salt Lake County Jail
Was the defendant acting under the authority or color of State Law at the time these claims occurred? YES. They showsed the plaintiff during his time of incarceration.

Defendant #8: The Church of Jesus Christ of Latter-Day Saints
Was the defendant acting under the authority or color of State Law at the time these claims occurred? YES. They sanctioned participation in the lawsuit, case #081906452, against the plaintiff, with the State of Utah, as the second count.

Defendant #9: The Utah State Hospital
Was the defendant acting under the authority or color of State law at the time these claims occurred? YES. They housed the plaintiff during his time of incarceration.

Defendant #10: Dr. Vitko
Is a citizen of: Utah
Is employed as: psychiatrist for the Utah State Hospital
Was the defendant acting under the authority or color of State Law at the time these claims occurred? YES. She is a psychiatrist ordered for the plaintiff to give a mental status report to the court in case #081906452.

Defendant #11: Dr. Partridge
Is a citizen of: Utah
Is employed as: An evaluator for the Utah State Hospital
Was the defendant acting under the authority or color of State law at the time these claims occurred? YES. He is responsible for evaluating the trial competency of the plaintiff and to give a report to the court in case #081906452.

Defendant #12: Dr. Golding
Is a citizen of: Utah
Is employed as: A psychological evaluator for the court
Was the defendant acting under the authority or color of State law at the time these claims occurred? YES. He gave an evaluation of the plaintiff and reported to the court in case #081906452.

Defendant #13: Dr. Cahoon
Is a citizen of: Utah
Is employed as: A psychological evaluator for the court
Was the defendant acting under the authority or color of State law at the time these claims occurred? YES. She was ordered by Judge Trease to evaluate the plaintiff and gave a report to the court in case #081906452.

Defendant #14: Legal Defender Association
Was the defendant acting under the authority or color of State law at the time these claims occurred? YES. They assigned counsel for the plaintiff in Case #081906452.

Defendant #15: Adam Elmore
Is a citizen of: Utah
Is employed as: Defense Counsel for the Legal Defender Association
Was the Defendant acting under the authority or color of State law at the time these claims occurred? YES. He was the assigned defense counsel for the plaintiff in case #081906452.

Defendant #16: Judge Trease
Is a citizen of: Utah
Is employed as: Judge at the Mattheson Courthouse
Was the defendant acting under the authority or color of State law at the time these claims occurred? YES. She is the presiding Judge in case #081906452.

Defendant #17: Judge Royal Hansen
Is a citizen of: Utah
Is employed as: Judge at the West Jordan Courthouse
Was the defendant acting under the authority or color of State law at the time these claims occurred? YES. He was the presiding judge for the defendant's witnesses, Wayne and Judy GOODSELL's, protective order against the plaintiff, case #084402114, while he was still incarcerated.

Defendant #18: Brent Hyde
Is a citizen of: Utah
Is employed as: Head of security for The Church of Jesus Christ of Latter-Day Saints
Was the defendant acting under the authority or color of State law at the time these claims occurred? YES. He is the defendant's witness for the second count in case #081906452, against the plaintiff.

Defendant #19: Wayne Lewis GOODSELL
Is a citizen of: (last known) Riverton, UT
Is employed as: (last known) working in mailroom for Rhodes
Was the defendant acting under the authority or color of State law at the time these claims occurred? YES. He is the defendant's witness against the plaintiff in case #081906452. And was Respondent in Protective Order #084402114.

Defendant #20: Judy Kay GOODSELL
Is a citizen of: (last known) Riverton, UT
Is employed as: (last known) to retire in April 2009
Was the defendant acting under the authority or color of State law at the time these claims occurred? YES. She is the defendant's witness against the plaintiff in case #081906452.

# Nature of the Case

The plaintiff was arrested as part of a conspiratorial collusion involving the State of Utah, The Church of Jesus Christ of latter-Day Saints, and the plaintiff's parents, Wayne and Judy GOODSELL, for the intention of ① removing the plaintiff from the seperate residence in his parents' home, ② removing the plaintiff from society, ③ destroying the credibility of the plaintiff with labels of 'terrorist' and 'mentally ill', ④ covering up the kidnapping ("to carry away by unlawful force or fraud") of the plaintiff's three children from April 1997, at least until the children turn 18 years of age, and ⑤ silencing the plaintiff's scientific discoveries which confirm the accuracy of The Church of Jesus Christ of latter-Day Saints' founder, Joseph Smith's, work with translation.

Due to the fact that the defendant introduced the plaintiff's children and the dealings with the Office of Recovery Services (ORS) with their case #081906452, the plaintiff would therefore, likewise, be able to include the two in this lawsuit addendum.

And in lieu of the first case submitted by the plaintiff and the counts therein, the following counts are added.

Count I: Declaration of Independance; Amendment 5; Amendment 14 section 1 – right to liberty; not be deprived of liberty without due process of law

On the first Monday after the April Conference of The Church of Jesus Christ of Latter-Day Saints in 1997, the plaintiff's three children were secreted to the plaintiff's sister, Tiffany Huff's, home by the plaintiff's then wife, Stephanie (Thomson-GOODSELL) Humphreys and father, Wayne GOODSELL, defendant # 19, due to the violence of Stephanie toward the plaintiff in the presence of the children.

Count II: Declaration of Independance; Amendment 5; Amendment 14 section 1 – right to life; not be deprived of life without due process of law

On the first Wednesday after the April Conference of The Church of Jesus Christ of Latter-Day Saints (LDS hereafter) in 1997, the plaintiff's parents, Wayne and Judy GOODSELL, and Bishop, Lester Nielson of the LDS, removed the plaintiff from his residence and property, to the streets. A Utah Highway Patrol report on that Thursday, if not a Salt Lake County Sheriff's, Bluffdale Dept. and/or a Provo City Police report that Wednesday night, along with an employment absence for Thursday with the LDS, would confirm the eviction.

Count III: Declaration of Independance; Amendment 5; Amendment 14 section 1 – right to liberty; not be deprived of liberty and property without due process of law

On Thursday of the week following the previous incidents, Stephanie (Thomson-GOODSELL) Humphreys, carried away without the plaintiff's acceptance, nor a Utah court's permission, i.e. kidnapped, the three children and the property including the vehicle, out of the State of Utah, and out of the United States into Alberta, Canada. The Spring Coulee boarder at Montana and Alberta shoud have record of their entry that Friday; as well as LDS membership records will show the change of address around that time.

Count IV: Declaration of Independance; Amendment 5; Amendment 14 section 1 – right to liberty; not be deprived of liberty without due process of law

The LDS in Magrath, Alberta, Canada will have record of aiding and abetting with economic assistance to Stephanie (Thomson-GOODSELL) Humphreys after arriving.

Count V: Declaration of Independance; Amendment 5; Amendment 14 section 1 - right to life and liberty; not be deprived of life and liberty without due process of law

The LDS in Utah further aided and abetted with the kidnapping by not equally providing the plaintiff with economic assistance.

Count VI: Declaration of Independance; Amendment 5; Amendment 14 section 1 - right to liberty; not be deprived of liberty without due process of law

Stephanie (Thomson-GOODSELL) Humphreys abuses judicial process by filing divorce proceedings in Canada in 1998 to ① bypass Utah's divorce education requirement ② perjur herself by implying a legal seperation had been granted ③ force the plaintiff to sign under conditions of duress, and ④ deny the plaintiff the opportunity to appeal the decision due to Canada's one month time limit.

Count VII: Amendment 9 - "The enumeration in the Constitution of certain rights shall not be construed to deny or disparage others retained by the people."

ORS construed their job duties to disregard the plaintiff's report of kidnapping.

Count VIII: Article I section 10 - "No State shall... enter into any agreement or compact with another State or with a foreign power,..."

ORS accepted Canada's divorce ruling against the plaintiff.

Count IX: Declaration of Independance; Amendment 5; Amendment 14 section 1 - right to life; not be deprived of life and property without due process of law

ORS garnished the plaintiff's wages while employed with LDS, without prior notification, warning, or appeal. LDS employment records should contain plaintiff's wages from January 1999.

Count X Declaration of Independance; Amendment 5; Amendment 14 section 1 - right to liberty; not be deprived of liberty without due process of law

According to Brent Hyde's submissions, in case #081906452, the LDS responded to the plaintiff's scientific research inquiries and discoveries as a threat, establishing file #36434. Consequently in 2006, the plaintiff's reports of local LDS leadership violations and abuses to the proper chain of authority were instead intercepted by LDS security and placed in the plaintiff's file unresolved.

Count XI: Declaration of Independence; Amendment 5; Amendment 14 section 1 - right to life and liberty; not be deprived of life and liberty without due process of law

In May 2003 Wayne and Judy GOODSELL threatened the plaintiff to return to school, despite obtaining a bachelor's degree and protests against student loan debt, or be again removed from the residence. The University of Utah records will show the plaintiff had been enrolled.

Wayne and Judy GOODSELL have also threatened the plaintiff to be evaluated by a doctor in Provo who will diagnose everyone with a level of autism sufficient to receive government disability checks. The plaintiff's sister, Taralyn Longazo has had all four of her children diagnosed to obtain the government disability funding in these tough economic times, despite no history of autism in either side of their family.

Officer Carolina Herrin's narrative states that Wayne and Judy GOODSELL attempted to have the plaintiff "committed" into a mental institution. The plaintiff is aware of their attempt to have him sign over Power of Attorney under the pretext of assisting the plaintiff with his "debts" with the ORS, IRS, and student loans. The plaintiff has seen how they handled a Power of Attorney with Wayne's mother, whom he committed in a Care Center.

Wayne GOODSELL has a history of aggressive violence and abuse in resolving his concerns and has had to undergo anger management treatment. Whereas the plaintiff has never used violence, being properly taught as a child by his mother.

Also in 2008 the GOODSELL's put their house on the market for sale.

Count XII: Article I section 10 - "No State shall... enter into any agreement or compacts with another State, or with a Foreign Power, ..."

On 22 May 2007 the ORS retaliated against the plaintiff for his failed lawsuit against them in 2006 with a court hearing in the Matheson Courthouse before Commissioner Michelle Bloomquist, to enforce the validity of the divorce and their actions toward the plaintiff. The court never acknowledged the plaintiff's appeal.

In 2008 the ORS further threatened the plaintiff in a letter stating they successfully lobbied the Utah legislature to pass a bill into law, UCA 62A-11-603, to take effect 1 July 2008, to suspend the plaintiff's driver's license and pay fines for restoration.

Count XIII: Declaration of Independance; Amendment 5; Amendment 14 section 1 - right to liberty; not be deprived of liberty without due process of law

Officer Carolina Herrin's narrative statement: "They were told that an involuntary committment could only take place, once Travis broke the law."

Wayne GOODSELL's testimony: "... we have found that there is nothing we can do and nothing will be done unless and until he commits a crime that is consequential to his illness."

Judy GOODSELL's testimony: "We were told that there is really nothing that we can do unless he wants help, or if he breaks the law. We would like to see him get some medical help."

The dates for Wayne and Judy GOODSELL's testimonies were 7 August 2008. The plaintiff was arrested 20 August 2008, for acts accused of on 6 August 2008.

Count XIV: Declaration of Independance - "... That whenever any Form of Government becomes destructive of these ends, it is the Right of the People to alter or to abolish it, and to institute new Government... It is their right, it is their duty to throw off such Government..."

On 20 August 2008 the plaintiff was charged with three counts of UCA 76-5-107 terroristic threat to life or property with UCA 76-10-401(i) threatened the use of a weapon of mass destruction or threatened the use of a hoax weapon of mass destruction (ii) acted with intent to intimidate or coerce a civilian population or to influence or affect the conduct of a government or a unit of government; for presenting, Modern American Utopia, to the Utah State Capital, the Matheson Courthouse, and the LDS. The last page quotes from the Declaration of Independance and then states: "It is our duty as citizens to throw off our current Government and alter what is needed to conform to the United States Constitution, and abolish that which is corrupt and destructive."

From Brigham Young's, Governor of the Utah Territory and President of the LDS, 1857 letter to the President of the United States: "While we respect the General Government and are at all times willing to observe the laws... we will resist any attempt of Government Officials to set at naught our Territorial laws or to impose upon us those which are inapplicable and of right not inforce in this Territory."

Then Secretary Thompson interpreted this as a declaration of war sending U.S. Army Troops to Utah, and in 1858 Utah Legislation was indicted for treason.

Count XII: Declaration of Independance; Amendment 5; Amendment 14 section 1 - right to liberty; not be deprived of liberty without due process of law

From arresting officer's narrative: "Conclusion: GOODSELL was transported to the Salt Lake County Jail without any further incidents. He was booked in on charges of terroristic threat and was taken into the Jail's psychiatric observation area, due to his history with depression, the fact he had written a suicide note and that the things he wrote of, present him in a way in which he could be suffering from some type of psychiatric imbalance."

There is no "history of depression" for the plaintiff. And to defend the United States Constitution and the Declaration of Independance and demand one's government guarantees those rights, is ~~considered~~ construed by the defendant as a "terroristic threat" by someone "suffering from some type of psychiatric imbalance"?

Count XVI: Amendment 8 - "...nor excessive fines imposed..."

By arresting the plaintiff, the defendant has exposed him to the unresolved issues with the ORS, IRS, and Utah's Board of Education, whom all are monthly adding interest on their claimed debts owed.

Count XVII: Article I section 8 - "To promote the progress of science..."

Dr. Golding evaluated the plaintiff as mentally ill without using any forensic equipment nor based upon physical evidence. The evaluation was his opinion and not scientifically derived.

Count XVIII: Article I section 8 - "To promote the progress of science..."

Dr. Cahoon evaluated the plaintiff as mentally ill without using any forensic equipment nor based upon physical evidence. The evaluation was her opinion and not scientifically derived.

Count XIX: Article I section 8 - "To promote the progress of science..."

Dr. Vitko evaluated the plaintiff as mentally ill without using any forensic equipment nor based upon physical evidence. The evaluation was her opinion and not scientifically derived. And on 4 March 2010 she requested a "Sell hearing" to force the plaintiff to take psychotropic drugs, but it was ruled that her diagnosis of the plaintiff was incorrect; the plaintiff being allowed to give a defense.

Count XX: Declaration of Independance; Amendment 5; Amendment 14 section 1 — right to liberty, not be deprived of liberty without due process of law

Dr. Partridge has evaluated the plaintiff as not competent to stand trial according to the qualifications of UCA 77-15-5a

(i) comprehend and appreciate the charges or allegations against him
(ii) disclose to counsel pertinent facts, events, and states of mind
(iii) comprehend and appreciate the range and nature of possible penalties, if applicable, that may be imposed in the proceedings against him
(iv) engage in reasoned choice of legal strategies against him
(v) understand the adversary nature of the proceedings against him
(vi) manifest appropriate courtroom behavior
(vii) testify relevantly, if applicable

Yet it should be clear and apparent that the plaintiff with just these lawsuits, is more than competent to stand trial.

Count XXI: Amendment 4 - "The right of the people to be secure in their persons, houses, papers, and effects against unreasonable searches and seizures shall not be violated, ..."

From Wayne Goodsell's Protective Order testimony, case #084402114: "On or about August 2008 Petitioner found a journal that Respondant was keeping. In the journal Respondant stated that he will kill Petitioner and Petitioner's wife Judy Goodsell. Petitioner gave a copy of journal to prosecuting attorney and to Respondant's doctor for evaluation."

① The plaintiff's residence was broken and entered into and property stolen
② Potential evidence tampering
③ Perjures himself with no statement about plaintiff "will kill", and about plaintiff having a doctor.

Zion's Bank had contacted the plaintiff during his incarceration on two seperate occasions. Wayne and Judy Goodsell were commiting identity theft, impersonating the plaintiff to tamper with his account.

Count XXII: Amendment 14 section 2; Amendment 26 — the right to vote

The Salt Lake County Jail denied the plaintiff his right to vote in the 2008 Presidential Election.

Count XXIII: Amendment 14 section 2; Amendment 26 - The right to vote
The Utah State Hospital denied the plaintiff his right to vote in the 2009 Election.

Count XXIV: Amendment 1 - "Congress shall make no law respecting the establishment of religion or prohibiting the free exercize thereof..."
The Salt Lake County Jail denied the plaintiff of wearing his religious garments.

Count XXV: Amendment 1 - "Congress shall make no law respecting the establishment of religion or prohibiting the free exercize thereof..."
The Salt Lake County Jail denied the plaintiff of his unique religious exercize of personal genealogical research.

Count XXVI: Amendment 1 - "Congress shall make no law respecting the establishment of religion or prohibiting the free exercize thereof..."
The Utah State Hospital denied the plaintiff of his unique religious exercize of personal genealogical research.

Count XXVII: Amendment 1 - "Congress shall make no law respecting the establishment of religion or prohibiting the free exercize thereof..."
Dr. Vitko has threatened the plaintiff with a "Sell hearing" to force psychotropic drugs on two seperate occasions. The second threat resulted in a "Sell hearing". It is against the plaintiff's religious beliefs to take psychotropic drugs.

Count XXVIII: Amendment 4 - "The right of the people to be secure in their persons, houses, papers, and effects against unreasonable searches and seizures shall not be violated,..."
Dr. Vitko has been tampering with the defendant's witnesses, Wayne and Judy GOODSELL indivulging the plaintiff's records and status. The complaint is being investigated by the US Dept. of Health and Human Services, Office for Civil Rights, transaction #10-108064.
The plaintiff has also been punished by Dr. Vitko whenever heresay accusations of "threats" about the plaintiff have been made; his case dealing with accusations of "terroristic threats". The plaintiff has made no threats.

c. The following monetary relief, tax free:

| | |
|---|---|
| (i) Basic necessities: | $3,000,000 |
| (ii) From the State of Utah: | $50,000,000,000 |
| (iii) From Salt Lake County: | $100,000,000 |
| (iv) From Salt Lake County Sheriff's Office: | $100,000,000 |
| (v) From Utah Highway Patrol: | $100,000,000 |
| (vi) From the Utah State Hospital: | $100,000,000 |
| (vii) From Legal Defender Associations: | $100,000,000 |
| (viii) From LDS | $100,000,000,000 |
| (ix) From Salt Lake County Jail: | $100,000,000 |

d. Some type of punishment or prosecution toward employment terminations, bar or license revokings, and/or prison terms for the following:
Lohra L. Miller; Howard Lemcke; Carolina Herrin; Aaron Torres; Dr. Vitko, Dr. Partridge; Dr. Golding; Dr. Cahoon; Adam Elmore; Judge Trease; Royal Hansen; Brent Hyde; Wayne Lewis Goodsell; and Judy Kay Goodsell

## Declaration under Penalty of perjury

The undersigned declares under penalty of perjury that he is the plaintiff in the above action, that he has read the above complaint, and that the information contained therein is true and correct 28 USC § 1746; 18 USC § 1621

Executed at Provo, UT on 8 March 2010

Travis Wayne Goodsell
(signature)

## D. Injury

1. The plaintiff has suffered the following injuries by the actions of the defendants: The loss of his three children, residence, transportation, communization, employment and income, property, religious property and materials, scientific research, discovery, and reference papers and materials, 13 years of my life with a release from incarceration sending me to the streets, the loss of my health and wellness including: contacts for vision, proper diet for high hermaticrit and dangerously low 'good' cholesterol and a proper weight; regular daily exercize, dental care now requiring implants; loss of a good credit rating to effectively survive in an economy

## E. Previous lawsuits and Administrative relief

1. The plaintiff has filed other lawsuits in federal court that deal with the same facts that are involved in this action.
   a. Parties to previous lawsuit: Travis Wayne GOODSELL vs. The State of Utah, et al.
   b. This case is submitted as an addendum to follow up the other case.
   d. Issues raised: Numerous US Constitutional violations by the defendant concerning the arrest, the case, and due process of law.

## F. Request for relief

1. I believe that I am entitled to the following relief:
   a. Either immediate temporary housing, food, and basic necessities or immediate access and use of monetary relief.
   b. An immediate order to cancel and clear the plaintiff's "debts" with the government agencies of the ORS, IRS, and Utah Board of Education.